## UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
#### ORLANDO DIVISION

**ROSEANGELA GRASSO,**

       **Plaintiff,**

**v.**                                                               **Case No:  6:13-cv-1536-Orl-28GJK**

**ELIZABETH DUDEK,**

       **Defendant.**

## REPORT AND RECOMMENDATION

This cause came on for consideration without oral argument on the following motion filed herein:

> **MOTION:**    **PLAINTIFF'S MOTION ON LIABILITY FOR ATTORNEYS' FEES AND LITIGATION EXPENSES (Doc. No. 23)**
>
> **FILED:**      **November 15, 2013**
>
> ---
>
> **THEREON** it is **RECOMMENDED** that the motion be **DENIED**.

On October 4, 2013, Plaintiff filed a Complaint for Declaratory and Injunctive Relief against the Secretary of the Florida Agency for Health Care Administration ("AHCA"). Doc. No. 1. AHCA is the state agency that operates Florida's Medicaid program. When Plaintiff filed the Complaint, she was 20 years old, but was to turn 21 in four days, on October 8, 2013. Because of a serious medical condition, she was receiving Private Duty Nursing ("PDN") in her home. In March 2013, she was advised that when she turned 21, Medicaid would no longer pay for PDN in her home, and she would no longer receive these services. Plaintiff alleges that home PDN services

are, in fact, available under another Medicaid program for adults in her situation. In her complaint, she alleges that she is entitled to relief under both Title II of the American with Disabilities Act, 42 U.S.C. § 13132, and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a). Doc. No. 1.

With her Complaint, Plaintiff filed a Motion for Temporary Restraining Order and Preliminary Injunction, asking the court to "grant her a temporary restraining order and preliminary injunction prohibiting Defendant from terminating the community-based nursing services that she currently receives. Doc. No. 2. That same day, the court entered an *ex parte* Temporary Restraining Order ("TRO"), enjoining Defendant from terminating the PDN services Plaintiff was receiving in her home through Florida's Medicaid program. Doc. No. 5. The court stated that the TRO would remain in effect for 14 days, and set a hearing for October 18, 2013. *Id*. On October 9, 2013, Defendant appeared and filed an unopposed motion to continue the hearing until November 4, 2013. Doc. No. 9. In the motion, Defendant consented to a continuation of the TRO until the rescheduled hearing. *Id*. Defendant stated that it expected and intended that Plaintiff would be enrolled in a Medicaid program providing the required home PDN services by November 1, 2013. Doc. No. 9. The motion was granted. Doc. No. 10.

On November 1, 2013, Defendant filed a motion to dismiss due to mootness. Doc. No. 15. In the motion, Defendant stated that because of delays caused by Plaintiff, "[w]hat should have been a smooth transition to the continuation of services under a different Medicaid program was not," but that Plaintiff was not successfully enrolled in a Medicaid program that provided her with the needed services. *Id*. at pp. 1-2. As a result, Defendant asked the court to hold that Plaintiff's claims are moot and to dismiss the case with prejudice. *Id*. at 12. On November 15, 2013, Plaintiff filed a response to the motion, agreeing that the case should be dismissed, but arguing that the dismissal should be without prejudice. Doc. No. 21. Also on November 15, 2013, Plaintiff filed

a motion for attorney fees and expenses, which is now before the court for a report and recommendation. Doc. No. 23.[1] The motion was resisted by Defendant on December 2, 2013. Doc. No. 26. On November 21, 2013, the court entered an order dismissing the case without prejudice as moot, indicating that the case was dismissed without prejudice because there had been no adjudication on the merits. Doc. No. 24 at 1.

Plaintiff argues she is entitled to recover attorney fees under both the ADA and Section 504 of the Rehabilitation Act, both of which authorize an award of attorney fees to the prevailing party. 42 U.S.C. § 12205 and 29 U.S.C. § 794a(b). The term "prevailing party" under the ADA and Section 504 is to be interpreted consistently with its meaning under Section 1988 of the Civil Rights Attorneys' Fees Act, 42 U.S.C. § 1988(b). *Hensley v. Eckerhart*, 461 U.S. 424, 433 n. 7, 103 S.Ct. 1933, 1939 n. 7, 76 L.Ed.2d 40 (1983) ("The standards set forth in this opinion [construing the recovery of attorney fees under § 1988] are generally applicable in all cases in which Congress has authorized an award of fees to a 'prevailing party'"); *Barnes v. Broward County Sheriff's Office*, 190 F.3d 1274, 1277 (11th Cir.1999) (applying analysis of prevailing party standard under Section 1988 in an ADA case).

Plaintiff asserts that she is a prevailing party in this case, either because she was awarded relief on the merits by the court when it granted her motion for a TRO, or because the case resulted in a judicial imprimatur on a change in the legal relationship between the parties. Doc. No. 23 at 8-10. She asks for permission to submit documentation to establish the amount the attorney fees and expenses she is entitled to recover. Doc. No. 23 at 5. Defendant opposes the motion, arguing that the only thing achieved by the Plaintiff in this action was the issuance of a TRO, and that

---

[1] On November 21, 2013, the court dismissed the case without prejudice, reserving jurisdiction to rule on the motion for attorney fees and expenses. Doc. No. 24.

"[t]he TRO did not confer prevailing party status because it was neither relief on the merits nor a judicial imprimatur on a changed legal relationship between the parties." Doc. No. 26 at 2.

"The touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute." *Texas State Teachers Assn. v. Garland Independent School Dist.*, 489 U.S. 782, 792–793, 109 S.Ct. 1486, 1494, 103 L.Ed.2d 866 (1989). "If the plaintiff has succeeded on any significant issue in litigation which achieved some of the benefit the parties sought in bringing suit, the plaintiff has crossed the threshold to a fee award of some kind." *Texas State Teachers Assn.*, 489 U.S. at 791-92, 109 S.Ct. at 1493 (internal citations omitted). The Eleventh Circuit interprets the Supreme Court's language to require either: "(1) a situation where a party has been awarded by the court at least some relief on the merits of his claim or (2) a judicial imprimatur on the change in the legal relationship between the parties." *Common Cause/Georgia v. Billups*, 554 F.3d 1340, 1356 (11th Cir. 2009).

In the Eleventh Circuit, TRO's are intended to protect against irreparable harm and to preserve the status quo until a decision on the merits can be made. *See Canal Auth. Of State of Florida v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974); *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225 n. 1 (11th Cir. 2005); *Taylor v. City of Fort Lauderdale*, 810 F. 2d 1551, 1558 (11th Cir. 1987) (stating a TRO decides no substantive issue but merely preserves status quo). Thus, the TRO entered in this case was not a ruling on the merits, but simply protected against irreparable harm and preserved the status quo until the Defendant could be served a ruling on the merits made. *See also Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70 of Alameda County*, 415 U.S. 423, 439 (1974) ("Ex parte temporary restraining orders are no doubt necessary in certain circumstances, but under federal law they

should be restricted to serving the underlying purpose of preserving the status quo and preventing irreparable harm just so long as necessary to hold a hearing, and no longer.").

Plaintiff cites the court to *Mastrio v. Sebelius*, 2013 WL 1336838 (D.Conn.), where the court discussed whether a plaintiff can be a "prevailing party" based on the issuance of a TRO. Doc. No. 23 at 6-7. In that case, the plaintiff, brought suit on behalf of Ms. Prendergast for emergency injunctive relief "to enjoin the defendant from continuing to deny coverage of Ms. Prendergast home health services under Medicare Part C." *Mastrio*, at *1. A magistrate judge granted a TRO, and Ms. Prendergast began receiving benefits. *Id*. After the TRO expired, Ms. Prendergast continued to receive benefits until her death. *Id*. Plaintiff then moved for an award of attorney fees. *Id*. The defendant opposed the motion, arguing that the plaintiff was not a prevailing party. *Id*.[2]

The court noted that "[t]he Second Circuit has specified that a grant of temporary relief may provide the basis for 'prevailing party' status." *Mastrio*, at *4 (citing *Vacchio v. Ashcroft*, 404 F.3d 663, 673 (2d Cir. 2005) ("When a party receives a stay or preliminary injunction but never obtains a final judgment, attorneys' fees are proper if the court's action in granting the preliminary injunction is governed by its assessment of the merits.")). On the other hand, the court noted the following: "However, the procurement of a TRO in which the court does not address the merits of the case but simply preserves the status quo to avoid irreparable harm to the plaintiff is not by itself sufficient to give a plaintiff prevailing party status." *Id*. (citing *Christopher P. v. Marcus*, 915 F.2d 794, 805 (2d Cir.1990)). The court in *Mastrio* reviewed the language in the

---

[2] The court in *Mastrio* adopted and incorporated by reference the decision of a magistrate judge granting the TRO. However, the magistrate judge's decision is not attached to the published opinion of the Connecticut District Court, so the factual background of the case in not entirely clear. However, it appears from the factual summary in the published opinion that Ms. Prendergast was not receiving Medicare benefits when the case was filed.

TRO order and determined that a "merits analysis" had been undertaken, and that the decision to grant the TRO was governed by this assessment of the merits. *Mastrio*, at *5. The court stated, "Because the TRO compelled Defendant to restore Ms. Prendergast's benefits, it necessarily altered the legal relationship between the parties." *Id*.

Plaintiff points out that, like the court in *Mastrio*, the court here concluded that the plaintiff had "established a substantial likelihood of success on the merits." Doc. No. 23 at 7 (citing the TRO, Doc. No. 5 at 2). Plaintiff argues that when the TRO was entered, she was four days away from losing her home nursing services, and that since Defendant continued those benefits without interruption because of the entry of the TRO, the TRO "altered the legal relationship of the parties." Doc. No. 23 at 7. Defendant points out that the decision in *Mastrio* is non-binding, argues that, in any event, the reasoning of the court lacks merit. Doc. No. 26 at 5. Defendant further distinguishes the case by the fact that the TRO in that case was issued only after the defendant had an opportunity to respond, while the TRO in this case was issued *ex parte*.

The court believes that *Mastrio* is factually distinguishable from the present case. It appears that in *Mastrio* the plaintiff was not receiving benefits when suit was commenced, and only began receiving benefits after the entry of the TRO. In that situation it was easy for the court to find that the TRO had altered the legal relationship between the parties. Here, Plaintiff was receiving benefits when suit was commenced, and the TRO prevented Defendant from stopping the benefits, so she continued to receive benefits. In this situation, it is harder to find that the legal relationship between the parties was altered by the issuance of the TRO. From this, it would appear clear that the TRO in this case simply maintained the status quo. "[A] TRO alone does not constitute prevailing on the merits where the TRO did no more than preserve the status quo." *Bisciglia v. Kenosha Unified Sch. Dist. No. 1*, 45 F.3d 223, 230-31 (7th Cir.1995); *see also Bly v.*

*McLeod*, 605 F.2d 134, 137 (4th Cir.1979) (holding that party obtaining TRO was not a "prevailing party" because the particular TRO in question only preserved the status quo). The fact that the judge, in entering the TRO in this case, made a finding that Plaintiff had "established a substantial likelihood of success on the merits" (Doc. No. 5) is not enough to make the TRO anything more than a ruling that preserved the status quo.

Plaintiff argues that the benefits would have been cut off if the TRO had not been entered, and that this is enough to establish that an alteration of the legal relationship between the parties occurred when the TRO was entered. Doc. No. 23 at 8-9. The court does not agree. Plaintiff is essentially arguing that by entering the TRO, the court caused the Defendant to continue Plaintiff's services and ultimately caused the Defendant to voluntarily change its conduct, which provided Plaintiff with the relief she sought. Plaintiff's argument is akin to the "catalyst theory," which "posits that a plaintiff is a 'prevailing party' if it achieves the desired result because the lawsuit brought about a voluntary change in the defendant's conduct." *Buckhannon Board and Care Home v. West Virginia Dep't of Health and Human Services*, 532 U.S. 598, 601 (2001). In *Buckhannon*, the Supreme Court rejected the catalyst theory as a basis for prevailing party status. *Id*. at 601-02. "A defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial imprimatur on the change [in the legal relationship between the parties]." *Id*. at 605. Accordingly, because the TRO was neither a court awarded ruling on the merits nor a judicial imprimatur on the change in the legal relationship between the parties, Plaintiff is not a prevailing party and, therefore, is not entitled to an award of attorneys' fees.

Based on the forgoing, it is **RECOMMENDED** that the Court:

1. **DENY** the Motion (Doc. No. 23); and

- 8 -

    2.   Direct the Clerk to close the case.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal. If the parties have no objection to this report and recommendation, they may promptly file a joint notice of no objection.

**RECOMMENDED** in Orlando, Florida on January 6, 2014.

_____
THE HONORABLE PAUL A. ZOSS
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties